IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHY LYONS,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>    Defendant.[1] | Case No. CIV-16-938-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

Plaintiff's application for supplemental security income was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 92-99). The Appeals Council granted Plaintiff's request for review and remanded for further administrative findings. (TR. 106-107). After a second hearing, the same ALJ issued another unfavorable decision. (TR. 15-28). Subsequently, the Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the second decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 20, 2010, the application date. (TR. 18). At step two, the ALJ determined Ms. Lyons had the following severe impairments: a mood disorder, an affective disorder, diabetes, and status post callouses to the feet. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 26). The ALJ further concluded that Ms. Lyons had the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) except the claimant can have no contact with the general public. Further, the claimant can perform simple one-to-two step tasks. Moreover, the claimant cannot perform complex or detailed instructions. Additionally, the claimant can

have no continued exposure to bright lights. Finally, the claimant can occasionally stoop and bend.

(TR. 22).

Based on the finding that Ms. Lyons could not perform her past relevant work, the ALJ proceeded to step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 80-81). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 81-82). The ALJ adopted the testimony of the VE and concluded that Ms. Lyons was not disabled based on her ability to perform the identified jobs. (TR. 27-28).

## III.  ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ: (1) committed error at step two, (2) failed to properly evaluate Plaintiff's obesity, (3) engaged in selective review of a consulting physician's opinion, and (4) failed to consider various impairments in assessing Plaintiff's RFC.[2]

## IV.  STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir.

---

[2] Plaintiff has a separate point of error titled: "Playing Doctor." (ECF No. 16:20). There, Ms. Lyons argues that the ALJ erroneously substituted his own opinion for that of medical professionals. (ECF No. 16:20-21). But the Court will not consider this argument because it is undeveloped and Plaintiff has not cited any specific examples. *See* (ECF No. 16: 20-21); *Kirkpatrick v. Colvin*, ___ F. App'x. ___, 2016 WL 5920745, at *3 (10th Cir. 2016) (rejecting Plaintiff's argument because it was undeveloped and "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   NO ERROR AT STEP TWO

Plaintiff alleges two errors at step two, but neither have merit. At step two, the ALJ concluded that Ms. Lyons suffered from severe impairments involving a mood disorder, an affective disorder, diabetes, and status post callouses to her feet. (TR. 18). The ALJ also made a specific finding that the following impairments were not severe: Plaintiff's peripheral neuropathy, status post right arm pain, hypertension, asthma, and obesity. (TR. 18). Ms. Lyons alleges that the ALJ employed a "flawed test" for severity and erred in concluding that the peripheral neuropathy, arm pain, hypertension, and asthma were not severe.[3] (ECF No. 16:4-11). Plaintiff goes on to then cite evidence which she believes would support a finding that the non-severe impairments were, in fact, severe. (ECF No. 16:4-11). But the Court need not address Plaintiff's allegations because the ALJ found other severe impairments and proceeded to the remaining steps of the disability evaluation. *See Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to

---

[3] Plaintiff also includes a section on obesity in her step two argument, but that argument involves allegations regarding the ALJ's failure to properly evaluate Plaintiff's obesity in connection with her other severe impairments. (ECF No. 16:11-15). Thus, the Court will address the argument separately.

designate another disorder as 'severe' at step two does not constitute reversible error. . .").

Next, citing *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2003), Ms. Lyons argues that the ALJ's step two findings were inadequate. (ECF No. 16:18-20). But her reliance on *Wells* is misplaced.

In *Wells*, the ALJ had made a step-two finding that the plaintiff's mental impairments were not severe. *Wells*, 727 F.3d at 1068. The ALJ then stated: "[t]hese findings do not result in further limitations in work-related functions in the [RFC] below." *Id.* at 1069 (brackets in original). The Tenth Circuit Court of Appeals stated that the ALJ's language "suggest[ed]" that he may have relied on his step-two findings to conclude that the plaintiff had no limitations at step four based on mental impairments. *Id.* at 1069. If so, the Court stated, such a conclusion would be considered "inadequate under the regulations" because the RFC analysis at step four required "a more detailed assessment" "describing how the evidence *support[ed] each conclusion*, citing specific medical facts." *Id.* (emphasis in original).

Ms. Lyons contends that the ALJ erred at step two by making findings more egregious than the step two findings condemned in *Wells*. Plaintiff states: "Worse yet, in contrast to the step-two statement that *Wells* implied would be inadequate, at step two in Ms. Lyons's case the ALJ made *no statement whatsoever* regarding all severe or non-severe impairments in her RFC which is clearly error." (ECF No. 16:20) (emphasis in original). This statement suggests that Plaintiff believes *Wells* requires some sort of finding at step two regarding the impact of the impairments at step four. But such an

5

assumption overstates the ALJ's duty at step two, and misses the import of the holding in *Wells*.

At step two, the ALJ's duty is limited to determining whether the claimant suffers from a severe impairment or combination of impairments. *See Bowen v. Yuckert,* 482 U.S. 137, 140-141 (1987); 20 C.F.R. § 416.920(c). The ALJ complied with this duty, finding that Ms. Lyons suffered from four severe impairments. *See* TR. 18. *Wells* did not require the ALJ to make a step two finding beyond severity. Thus, the Court rejects Plaintiff's contrary allegation of error.

## VI. ERROR IN THE CONSIDERATION OF A CONSULTING PHYSICIAN'S OPINION

Ms. Lyons argues that the ALJ erred in his consideration of an opinion from consultative physician, Dr. Marte Martinez. According to Plaintiff, the ALJ: (1) selectively reviewed the opinion and (2) failed to explain the weight he accorded it. (ECF No. 16:15-16). Ms. Lyons is correct.

On February 21, 2011, Dr. Martinez performed a consultative physical examination on Ms. Lyons and issued a written report. (TR. 734-740). In summarizing Dr. Martinez' opinion, the ALJ noted that Dr. Martinez found pain in Plaintiff's feet and that she walked with a bilateral limp, but the ALJ also relied on the physician's findings that Plaintiff:

- Had great toe strength that was "equal and adequate bilaterally,"
- Had no areas of numbness, paresthesia, or focal or sensory deficits,
- Was able to rise from a chair without any trouble, and
- Ambulated with a slow, steady gait, without the use of an assistive device.

(TR. 24).

However, the ALJ failed to mention that Dr. Martinez also found:

- A diagnosis of peripheral neuropathy,

- Multiple bunions throughout the plantar surface of both feet, which resulted in pain,

- That Plaintiff was in moderate discomfort upon ambulation,

- That Plaintiff was unable to perform a "[t]oe and heel" walking test "due to secondary pain from [Plaintiff's] feet," and

- Only a 50% range of motion in Plaintiff's bilateral hips.

(TR. 734, 737, 740).

At step four, the ALJ determined that Ms. Lyons had an RFC for a full range of "light work" which required Plaintiff to be able to "stand[], walk[], off and on, for a total of approximately 6 hours of an 8-hour workday." SSR-83-10, 1983 WL 31251, at *5 (1983). As a basis for this determination, the ALJ specifically discussed Ms. Lyons' foot callouses which he had found to be severe at step two. *See* TR. 18. The ALJ apparently determined that the callouses had no impact on Plaintiff's ability to perform a full range of light work, as evidenced by the RFC. In support for this determination, the ALJ relied on:

- A "normal" foot exam, and

- A notation that Plaintiff's feet "had a normal appearance and no swelling."

(TR. 24). The ALJ also assessed the opinion from Dr. Martinez, but as alleged by Ms. Lyons, the ALJ's analysis was deficient for two reasons.

First, the ALJ omitted critical portions of Dr. Martinez' opinion which directly related to Ms. Lyons' ability to perform the standing and walking requirements of light work. The doctor specifically noted multiple bunions on Plaintiff's feet, which resulted in pain and

7

rendered Plaintiff unable to perform the "toe and heel" walking test. (TR. 740). The doctor also noted that Ms. Lyons had moderate discomfort while walking. (TR. 740). But the ALJ omitted these portions of the physician's opinion without explanation. The Tenth Circuit Court of Appeals has held that this type of selective review is improper. In *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012), the Court stated:

> [T]he ALJ fully discounted the bulk of [a physician's] mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not. That is error under this circuit's case law. We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of non-disability.").

*Id.* at 1292. Under *Chapo*, the ALJ's discussion was deficient because he omitted critical portions of Dr. Martinez' opinion which bore directly on Plaintiff's ability to perform the full range of light work. Although the ALJ noted that Plaintiff suffered from bilateral foot pain and walked with a limp,[4] the Court is unable to discern whether the ALJ had credited those opinions or not, as he failed to explain the weight, if any, he had accorded the opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."). In sum, the Court concludes that the ALJ committed reversible error in selectively reviewing Dr. Martinez' opinion and failing to explain his treatment of the same. *See Brownrigg v. Berryhill*, Case No. 16-7002, slip op. at 12-13 (10th Cir. April 19, 2017) (finding reversible error based on the ALJ's failure to: (1) "acknowledge or reconcile" inconsistencies between consulting examiner's opinion and ALJ's decision and (2) explain the weight given to the opinion).

---

4 *See* TR. 24.

## VII.   ERROR IN THE CONSIDERATION OF OBESITY

Social Security Ruling 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002). Thus, an ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but rather, must "evaluate each case based on the information in the case record." *Id.* at *6.

At step two, the ALJ made findings regarding Plaintiff's obesity. (TR. 19). There, the ALJ: (1) noted that Plaintiff was obese and (2) stated that he had considered SSR 02-1p, which instructed adjudicators to consider the effects of obesity at steps three and four. (TR. 19). The ALJ then noted that when obesity is defined as a "medically determinable impairment"—i.e.—severe, "consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment, in addition to any limitations resulting from any other physical or mental impairment identified." (TR. 19). However, the ALJ noted, that because Ms. Lyons' obesity was considered a non-severe impairment, "it results in no significant limitation of the claimant's ability to perform work-related activity." (TR. 19). As alleged by Plaintiff, the ALJ's discussion was insufficient. (ECF No. 16:14-15).

At the hearing, Plaintiff testified that her weight, combined with pain in her feet, allowed her only be on her feet for 10 minutes. (TR. 72). In the decision, the ALJ failed to mention this portion of Plaintiff's testimony when evaluating her credibility, so the Court cannot determine whether he believed the allegations. (TR. 23). And as discussed,

the ALJ also failed to properly evaluate Dr. Martinez' findings regarding Plaintiff's reduced range of motion in her hips and bunions in her feet which caused pain, discomfort while walking, and an inability to perform a walking test. *See supra*.

Here, the ALJ seemed to limit his consideration of Plaintiff's obesity at step two, because it was not a severe impairment. (TR. 19). But the Tenth Circuit Court of Appeals has specifically prohibited this type of limited discussion. *See Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2003) (noting that it was "inadequate" for an ALJ to fail to evaluate an impairment at step four, simply because he had deemed the impairment not severe at step two). And the SSA has specifically stated that the ALJ must consider obesity beyond step two, a standard which the ALJ recognized. See SSR-02-1p, at *3, 6; TR. 19. Furthermore, as discussed, the ALJ failed to consider portions of Dr. Martinez' opinion involving a reduced range of motion in Plaintiff's hips and bunions which caused her pain and difficulty walking. *See supra*. Dr. Martinez' opinion, combined with Plaintiff's obesity, could have resulted in additional limitations in the RFC. *See* SSR 02-1p, at *6 ("The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitations than might be expected from the arthritis alone.").

Thus, the Court concludes that the ALJ erred in failing to consider the effects of Plaintiff's obesity alone, and in combination with other impairments when formulating the RFC.

## VIII. ERROR IN THE CONSIDERATION OF IMPAIRMENTS AT STEP FOUR

Plaintiff alleges that the ALJ erred at step four by failing to consider functional limitations related to her impairments involving: an eye impairment, foot callouses, migraine headaches, and asthma. (ECF No. 16:16-18).

Regarding her eye problems, Plaintiff cites:

- Watery eyes,
- A need to close her eyes in the light, and
- An inability to read a newspaper, see street signs, or drive.

(ECF No. 16:17). In the RFC, the ALJ specifically found that Plaintiff could not perform work which required continued exposure to bright lights. (TR. 22). Regarding watery eyes, Plaintiff has failed to explain how this affliction would prevent her from working. *See McNally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations") (citation omitted). And Plaintiff's testimony about her inability to read a newspaper, see street signs, or drive, was given in response to questions from the ALJ regarding Plaintiff's ability to concentrate, not any specific problems with her eyes. *See* TR. 77-78. Accordingly, the Court concludes that the ALJ adequately considered the functional effects of Plaintiff's eye problem as reflected in the RFC.

Regarding functional limitations resulting from foot callouses, the Court has found error in the ALJ's failure to properly discuss the opinion from Dr. Martinez, which includes limitations in walking due to pain from bunions in both feet. *See supra*. Reconsideration

of this opinion may affect the RFC regarding functional limitations resulting from Plaintiff's foot callouses, and any further discussion at this time would be premature.

Regarding Plaintiff's asthma, Ms. Lyons cites a 2014 emergency room visit where she had complained of shortness of breath and was diagnosed with mild pulmonary fibrosis. (ECF No. 16:17). The Court understands that "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, ___ F. App'x ___, 2016 WL 6440368 at *4 (10th Cir. 2016). However, as a result of her breathing problems, the emergency room physician prescribed Plaintiff an albuterol inhaler and nebulizer. (TR. 909). At the hearing, Plaintiff testified that she performed a breathing treatment 4 times per day and that after each treatment, she felt weak and tired and had to lie down for 1-2 hours. (TR. 70). In evaluating Plaintiff's testimony, the ALJ cited Plaintiff's inhaler use, but failed to mention that she had to perform breathing treatments four times a day which required her to lie down following each treatment. (TR. 23). Such a limitation could impact Plaintiff's ability to work. But the Court will leave such determination to the ALJ on remand following a reconsideration of Plaintiff's asthma and potential resulting functional side effects from her medication.

Finally, Plaintiff argues that she suffers migraine headaches and her headache medicine causes sleepiness and dizziness. (ECF No. 16:17). At the hearing, Ms. Lyons testified accordingly, and in the decision, the ALJ noted that Plaintiff suffered from headaches twice weekly. (TR. 74-75, 23). But the ALJ erred in failing to discuss the side effects of Plaintiff's migraine headache medication. *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (holding it is error for an ALJ to fail to consider factors relevant to the pain analysis which are supported by the record). Reconsideration of the migraine

headaches and the effects of the headache medication may or may not result in additional limitations in the RFC. But that determination will be left to the ALJ in the first instance following reconsideration of the impairment on remand.

## IX. SUMMARY

The ALJ erred in his evaluation of: the opinion from Dr. Martinez; Plaintiff's obesity; and potential work-related limitations related to migraine headaches, asthma and medications used by Plaintiff for these conditions. These errors warrant remand. On remand the ALJ is instructed to: (1) consider and weigh Dr. Martinez' opinion, alone, and in connection with Plaintiff's obesity and (2) consider the combined effect of all of Plaintiff's impairments, both severe, and non-severe, when formulating the RFC.

## ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and brief of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development consistent with this opinion.

ENTERED on April 21, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE